UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X   **Civil Case No.:**
ROBERT P. DUGDALE,
                                                                                  **COMPLAINT**

                      Plaintiff,
  - against -                                                                **JURY TRIAL**
                                                                              **DEMANDED**
SOUNDHOUND AI, INC.,

                     Defendant.
-----------------------------------------------------------X

      Plaintiff ROBERT P. DUGDALE ("Plaintiff" or "Mr. Dugdale"), by and through his attorneys, JOSEPH & NORINSBERG, LLC, as and for his Complaint against Defendant SOUNDHOUND AI, INC. ("SoundHound," "Defendant," or the "Company"), alleges upon knowledge as to himself and his own actions, and upon information and belief as to all other matters, as follows:

## NATURE OF THE CASE

      1.     This action seeks monetary damages, declaratory, and equitable relief to redress Defendant's unlawful employment practices against Plaintiff, including: (i) failure to pay wages and commissions in violation of New York Labor Law §§ 190-198 ("NYLL"); (ii) breach of contract; (iii) violation of NYLL §§ 191-b and 191-c(3) regarding timely payment of commissioned salespersons; (iv) unjust enrichment; and (v) quatum meruit.

      2.     Plaintiff seeks to recover unpaid wages and commissions totaling approximately one hundred forty-two thousand nine hundred eighteen dollars and forty-nine cents ($142,918.49), plus liquidated damages, prejudgment interest, attorneys' fees, and costs.

      3.     Despite Plaintiff's successful performance in various senior sales positions, including his final role as Senior Account Executive, Defendant has a pattern of systematically

1

refusing to pay earned commissions, altering compensation plans without proper authorization, and delaying compensation reports, all in violation of New York law and contractual obligations.

4. Plaintiff seeks relief for these violations, including statutory damages under the NYLL, which provides for liquidated damages of twice the amount of unpaid wages.

## PRELIMINARY STATEMENT

5. This action arises from Defendant's systematic and unlawful conduct in failing to compensate Plaintiff for earned wages, commissions, and bonuses in violation of the NYLL and common law. Over the course of his employment from September 14, 2014, through September 13, 2024, Defendant repeatedly withheld earned commissions and altered compensation plans without authorization, in substantial financial damages to Plaintiff.

6. Plaintiff, who served in progressively senior roles culminating in the position of Senior Account Executive, consistently demonstrated exceptional performance in generating significant revenue for Defendant. Despite successfully closing numerous high-value accounts in the fourth quarter of 2023 including BlackRock, UBS, Ticketmaster, MetLife, and multiple other prestige enterprise clients, Defendant failed to pay approximately one hundred forty-two thousand nine hundred eighteen dollars and forty-nine cents ($142,918.49) in earned commissions, the remaining commissions still unpaid after eighteen (18) months. Defendant further breached its obligations by unilaterally and retroactively changing commission structures and failing to provide timely compensation reports.

7. Despite multiple attempts to resolve these issues, Plaintiff was repeatedly dismissed by several of Defendant's high-ranking executives whom he spoke to regarding Defendant's refusal to pay him the amount to which he is entitled.

8. Rather than meet its contractual obligations, Defendant has refused to provide Plaintiff with the compensation to which he is undisputably owed, necessitating this legal action to recover unpaid wages, statutory damages, and other relief as set forth under the NYLL and common law.

## JURY DEMAND

9. Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues so triable in this action.

## PARTIES

10. At all times relevant hereto, Plaintiff ROBERT P. DUGDALE is a citizen of the State of New York.

11. Upon information and belief, Defendant SOUNDHOUND AI, INC., is a Delaware corporation, with its principal place of business in Santa Clara, California.

12. On or about August 8, 2024, Defendant acquired Amelia US, LLC ("Amelia"), a conversational Artificial Intelligence business.

13. Plaintiff began working for Amelia, then known as IPsoft, Inc. (referred to collectively as "Amelia"), in September 14, 2014, which was later acquired by SoundHound, serving in various senior sales positions including Senior Account Executive.

14. Plaintiff continued his employment for Defendant until his resignation on September 13, 2024.

15. Amelia has its headquarters in New York, New York, with principal business offices located in the County of New York, State of New York.

16. Plaintiff is an individual who performed work for Defendant within the State of New York and was an "Employee" within the meaning of the NYLL.

17. At all relevant times, Defendant was and is an "Employer" within the meaning of the NYLL.

## JURISDICTION AND VENUE

18. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), as there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum of seventy-five thousand dollars ($75,000.00).

19. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTUAL ALLEGATIONS

### A. Mr. Dugdale's Employment History with Amelia and SoundHound

20. On September 14, 2014, Mr. Dugdale joined Amelia as Senior Sales Executive, with an initial base salary of approximately $140,000. His employment was formalized through a written employment agreement.

21. Throughout his tenure, Mr. Dugdale demonstrated exceptional performance, leading to a promotion to Senior Sales Director along with additional duties and responsibilities.

22. Plaintiff's exceptional relationship with his clients maintained huge revenue streams for Amelia, and later for SoundHound. During the fourth quarter of 2023, Plaintiff closed deals with numerous large clients, generating six million four hundred forty-one thousand three hundred thirty-six dollars and fifty cents ($6,441,336.50) in annual recurring revenue.

### B. Defendant's Systematic Compensation Violations

23. Despite Mr. Dugdale's consistent high performance and successful progression through senior roles, Defendant systematically failed to honor its compensation obligations.

24. In or about the end of 2023, Defendant announced that a less favorable compensation plan would be implemented at the beginning of 2024.

25. During the fourth quarter of 2023, Plaintiff earned commissions on his sales totaling one hundred eighty-two thousand nine hundred eighteen dollars and forty-nine cents ($182,918.49) pursuant to the compensation plan which was in effect at the time that those deals closed.

26. SoundHound did not have a system or platform through which employees could determine the commissions they earned each quarter.

27. Plaintiff was not provided with the routine commission report for the fourth quarter of 2023 until approximately June 2024, more than five months after the close of the fiscal quarter.

28. Plaintiff received his commission report months after Defendant's egregious announcement that it would be unilaterally and retroactively changing the compensation structure for sales that had already been closed in the fourth fiscal quarter of 2023, in direct violation of the contractual relationship between Defendant and Plaintiff.

29. Plaintiff engaged in many efforts to discuss this conflict with Defendant's officers, who declined to provide Plaintiff with the total amount he was contractually owed, amounting to one hundred eighty-two thousand nine hundred eighteen dollars and forty-nine cents ($182,918.49).

30. Instead, Defendant made a revised offer to Plaintiff for forty thousand dollars ($40,000.00), which was disbursed. This insulting offer was only **<u>twenty-two percent (22%)</u>** of the compensation to which Plaintiff was entitled.

31. Defendant's decision to financially harm Plaintiff is all the more perturbing because his relationship with Amelia's clients was central to Defendant's decision to purchase Amelia, where Plaintiff had originally been employed from September 2014 until its acquisition in August

2024. Specifically, Michael Zagorsek, Defendant's Chief Operating Officer, explicitly told Plaintiff that a personal endorsement by one of his client's "sealed the deal" for Amelia's acquisition.

32. From 2023 through Plaintiff's resignation in September 2024, Defendant engaged in numerous compensation violations, including:

    a. Changing compensation plans mid-OTR without proper documentation or signed amendments;

    b. Modifying commission percentages without authorization;

    e. Delaying the distribution of compensation reports until more than five months after the fiscal quarter closed; and

    f. Consistently ignoring payment disputes.

**C. Plaintiff's Attempts to Recover Unpaid Commissions**

33. Mr. Dugdale made multiple attempts to recover his unpaid commissions through the proper channels, all of which were ignored or rejected by Defendant.

34. During this period, Plaintiff repeatedly reached out to Thomas Wilkinson ("Wilkinson"), Defendant's Chief Financial Officer, for assisting in resolving this conflict. On or about May 31, 2024, Wilkinson informed Plaintiff that he would "do his best" to ensure that Plaintiff was compensated for those deals under the compensation plan for 2023.

35. When this promise did not materialize, Plaintiff attempted to escalate the issue to Lanham Napier ("Napier"), Defendant's Chief Executive Officer—Wilkinson dismissively directed Plaintiff not to contact Napier regarding this commission dispute again.

36. With the unpaid commissions now totaling one hundred forty-two thousand nine hundred eighteen dollars and forty-nine cents ($142,918.49), Defendant made a subsequent

settlement offer to Plaintiff, increasing his salary from one hundred ninety-five thousand dollars ($190,000.00) to two hundred twenty thousand dollars ($220,000.00), with a bonus of seventy-five thousand dollar ($75,000.00) which would be distributed over the course of four (4) months.

37. This inadequate settlement offer was rejected, as Plaintiff was undisputably entitled to the full owed balance from the deals which were closed in the fourth quarter of 2023.

38. During the disputed fiscal quarter, Mr. Dugdale had successfully closed deals with numerous high-value accounts, including BlackRock, Inc., Credit Suisse Services, UBS Bank USA, Wells Fargo, and JPMorgan Chase & Co. Despite these successes, Defendant failed to pay commissions on these accounts as required by the compensation plan which was in effect at the time.

39. Based upon the factual predicate set forth above, Defendant's acts are clearly being conducted in bad faith, in direct contravention to the protections of the NYLL.

**D. SoundHound's Acquisition of Amelia and the Continued Violations**

40. On August 8, 2024, Defendant SOUNDHOUND AI, INC. acquired Amelia US, LLC. As the successor employer, SoundHound assumed responsibility for all outstanding wage and commission obligations owed to Mr. Dugdale.

41. Despite the change in ownership, SoundHound has continued Amelia's pattern of failing to pay earned wages and commissions, refusing to honor the compensation obligations that transferred to them through the acquisition.

42. The total amount of unpaid wages, commissions, and other compensation owed to Mr. Dugdale now stands at one hundred forty-two thousand nine hundred eighteen dollars and forty-nine cents ($142,918.49), for which SoundHound, as successor to Amelia, is liable under New York law.

43. As a direct result of Defendant's bad faith efforts to withhold compensation which is owed to him, Mr. Dugdale was compelled to resign from his employment with Defendant after exactly ten (10) years of service to the Amelia. His loyalty to his employer was clearly not returned in kind.

44. Mr. Dugdale has made repeated attempts to resolve these compensation issues both before and after the acquisition, but Defendant has consistently failed to address these legitimate claims or provide accurate accounting of earned commissions.

45. Defendant's pattern of refusing to pay earned commissions and wages constitutes multiple violations of New York Labor Law, including NYLL §§ 191(1)(c), 191-b, and 191-c(3), as well as breach of contract, unjust enrichment, and quantum meruit.

## FIRST CAUSE OF ACTION
*(Violation of New York Labor Law § 191(1)(c) - Timely Payment of Wages)*

46. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

47. NYLL § 191(1)(c) requires employers to pay commissioned salespersons all wages and commissions earned within the timeframes specified by statute.

48. Defendant was, at all relevant times, Plaintiff's employer within the meaning of the NYLL, while Plaintiff was a commissioned salesperson within the meaning of the NYLL.

49. Defendant violated NYLL § 191(1)(c) by failing to pay Plaintiff his earned commissions within the statutorily required timeframe, with some commissions remaining unpaid for 12-18 months.

50. As a result of Defendant's willful violations of the NYLL, Plaintiff is entitled to recover from Defendant unpaid commissions, liquidated damages, prejudgment interest, attorneys' fees, and costs.

## SECOND CAUSE OF ACTION
*(Violation of NYLL § 191-b and § 191-c - Timely Payment of Sales Commission)*

51. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

52. NYLL §§ 191-b and 191-c require the timely payment of earned sales commissions and proper accounting of commission earnings.

53. Defendant violated these provisions by:

   a. Failing to pay earned commissions within the statutory timeframe;

   b. Failing to provide accurate or timely commission statements; and

   c. Unilaterally modifying commission structures without proper documentation.

54. These violations resulted in approximately one hundred forty-two thousand nine hundred eighteen dollars and forty-nine cents ($142,918.49) in unpaid commissions owed to Plaintiff.

55. Due to Defendant's willful violations and bad faith, Plaintiff is entitled to double damages under the NYLL, plus attorneys' fees, prejudgment interest, and costs.

## THIRD CAUSE OF ACTION
*(Breach of Contract)*

56. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

57. Plaintiff and Defendant entered into valid and binding employment agreements that specified Plaintiff's compensation structure, including base salary, commissions, and bonus arrangements.

58. Plaintiff fully performed all duties and obligations under these agreements, including:

    a. Meeting or exceeding sales quotas;

    b. Successfully managing major accounts;

    c. Generating significant revenue for Defendant;

    d. Performing additional duties during leadership transitions.

59. Defendant materially breached these agreements by:

    a. Withholding earned commissions;

    b. Modifying compensation terms without proper authorization;

    c. Failing to pay commissions on completed sales.

60. As a direct result of Defendant's breaches, Plaintiff has suffered damages in an amount to be determined at trial, but not less than one hundred forty-two thousand nine hundred eighteen dollars and forty-nine cents ($142,918.49).

### FOURTH CAUSE OF ACTION
*(Unjust Enrichment)*

61. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

62. Defendant has been unjustly enriched by retaining the benefits of Plaintiff's services, including revenue from accounts he secured and managed, without providing agreed-upon compensation.

63. Defendant's retention of these benefits without compensating Plaintiff is against equity and good conscience.

64. The circumstances are such that equity and good conscience require Defendant to make restitution to Plaintiff in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### *(Violation of NYLL § 193 - Unlawful Deductions)*

65.	The circumstances are such that equity and good conscience require Defendant to make restitution to Plaintiff in an amount to be determined at trial.

66.	NYLL § 193 prohibits employers from making any deductions from wages except those specifically authorized by law or by the employee for their benefit.

67.	Defendant violated this provision by unilaterally reducing commission percentages without authorization.

68.	These unauthorized deductions from Plaintiff's earned wages violate NYLL § 193.

69.	As a result of these violations, Plaintiff is entitled to recover the full amount of unlawful deductions, plus liquidated damages, attorneys' fees, and costs as provided by law.

## SIXTH CAUSE OF ACTION
### *(in the alternative-Quantum Meruit)*

70.	Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

71.	Defendant promised to pay Plaintiff certain compensation for the work Plaintiff provided with respect to his employment as set forth in the Employment Agreement and subsequent correspondence between Plaintiff and Defendant.

72.	Plaintiff satisfactorily performed the work at Defendant's direction with the good-faith expectation of receiving the compensation promised to him as set forth herein and which is usual and customary and of reasonable value for the services rendered.

73. Defendant failed and refused to pay Plaintiff compensation, which was fair, reasonable, and customary.

74. Defendant's conduct is actionable based upon *quantum meruit* under New York law.

75. As a result of Defendant's willful conduct, Plaintiff is entitled to recover his outstanding bonus and commission, plus interest, under a theory of *quantum meruit*, as a result of Defendant's actions.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

a. Declaring that the practices complained of herein are unlawful and in violation of the New York Labor Law and other applicable laws;

b. Awarding Plaintiff unpaid wages and commissions in the amount of one hundred forty-two thousand nine hundred eighteen dollars and forty-nine cents ($142,918.49), or such amount as may be proven at trial;

c. Awarding Plaintiff liquidated damages pursuant to NYLL § 198 in the amount of one hundred forty-two thousand nine hundred eighteen dollars and forty-nine cents ($142,918.49), representing double the amount of unpaid wages and commissions;

d. Awarding Plaintiff prejudgment and post-judgment interest at the maximum rate permitted by law;

e. Awarding Plaintiff costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees, and other costs;

  f.  Ordering Defendant to provide a complete and accurate accounting of all commissions earned by Plaintiff during his employment; and

  g.  Granting such other and further relief as this Court deems just and proper.

Dated: New York, New York
   September 4, 2025

                **JOSEPH & NORINSBERG, LLC**

                _____
                John J. Meehan, Esq.
                *Attorneys for Plaintiff*